TIM BOWDEN *v.* DAVID OATES ET AL

5-5226                                              452 S. W. 2d 831

Opinion delivered April 20, 1970

578

*Irwin, Streett & Braden,* for appellant.

*Williams & Gardner,* for appellees.

J. Fred Jones, Justice. This is an appeal by Tim Bowden from a judgment of the Pope County Circuit Court, affirming an order of the county court, laying out and establishing a private road for David and Bill Oates over Bowden's land.

David and Bill Oates are co-owners of land in the Northeast Quarter of Section 8, Township 7 North, Range 19 West in Pope County. The appellant Bowden owns the west half, and a Mr. Yarbrough owns the east half, of the east one-half of Section 5 immediately north of the Oates property. A county road runs east and west along the north boundary line of the Bowden and Yarbrough properties in Section 5. The south boundary line of the Bowden and Yarbrough properties forms the north boundary line of the Oates property, and this line is one mile south of the county road.

David Oates filed a petition in the Pope County Court under authority of Ark Stat. Ann. § 76-110 (Repl. 1957), for the laying out and establishment of a private road over adjacent lands from the county road to his own land. The sufficiency of the petition and the procedure followed under it, and under the statute, are not specifically questioned here, but Mr. Bowden contends that the case should be remanded to the circuit court for a new trial and he relies on the following point for reversal:

"The order of the county court was not in accordance with the report of the viewers and the judg-

ment of the circuit court is not in accordance with the report of the viewers and in fact the viewers report is so vague that a valid order could not be entered thereon."

We agree with the appellant that this case should be remanded for a new trial. The statutory procedure for establishing a private road through lands of another is set out in Ark. Stat. Ann. § 76-110 (Repl. 1957) as follows:

"When the lands, dwelling house or plantation of any person is so situated as to render it necessary for the owner thereof to have a private road from such lands, dwelling house or plantation to any public road or navigable watercourse over the lands of any other person, and such person shall refuse to allow such owner such private road, it shall be the duty of the county court, on the petition of such owner, and it appearing that he hath given to such person twenty [20] days' notice of such intended application, and that it is necessary for petitioner to have such private road, and that said person will not allow the same, and on said petitioner having first deposited with the clerk of said court a sum of money sufficient to pay all costs and expenses accruing on account of said petition, notice, view and survey of said private road, to appoint the viewers to lay off said road. Such viewers shall take the same oath, and shall be governed in all respects as viewers appointed to public roads are governed under this act. They shall examine the route proposed for such road, and any other route which they may deem proper, and; if they or a majority of them, shall be of opinion that a private road is necessary and proper, as prayed in the petition, they shall lay out the same in such manner as to produce the least inconvenience to the parties through whose land the same shall pass, and shall make a written report to the county court, describing the route of the road and the land through which the same shall

pass, naming the owner thereof, if known, and the damages· sustained by each owner of lands through which such road passes, which damages shall include the value of the land of each owner sought to be appropriated. Such report shall be recorded on the records of said county court."

The order for the establishment of a private road is provided for by Ark. Stat. Ann. § 76-111 (Repl. 1957) which reads as follows:

"If, upon the return of the viewers, the Court shall be of the opinion that it is necessary for the petitioner(s) to have said road from his said lands, dwelling house, or plantation, to said public road, or navigable water course, and said petitioner shall pay all costs and expenses. accruing on account of said petition for such private road, and all things relating thereto and following therefrom, including, the view and survey of said road and said damages sustained by each owner of the lands over which such road passes, an order shall be made establishing the same as a private road not exceeding thirty (30) feet wide, and the person applying for such road may proceed to open the same. Either party may appeal to the Circuit Court from said order within sixty (60) days from the rendition of such order, and not thereafter."

A case on appeal from a county court to a circuit court is tried de novo by the circuit court as other cases at law. (Ark. Stat. Ann. § 27-2006 [Repl. 1962]).

The record indicates that the three viewers appointed by the county judge made two separate trips to view the property involved, and that on their first trip they laid out the route for a road as well as appraised the acreage value of the property to be taken. The record is not clear as to why the viewers made the second trip to view the property, but the record indicates that on the first trip they attempted to lay out the road along the quarter section line with a part

of it on the east side of the line which would be on Mr. Yarbrough's land, and part of it on the west side of the line which would be on Mr. Bowden's land. An undated typewritten report of the viewers, together with a plat they apparently prepared, was apparently filed with the county court.[1] The report reads as follows:

> "Beginning at NW corner of NE NE of Section 5, Township 7, Range 19 West thence go South ¼ mile with a 10 ft. right of way on the East line and a 20 ft. on the West side thence continue South with 15 ft. right of way on the East side and the West side to East-West line of Oates Property. Must be fenced by buyer on the West side of road.

> "Appraised $150.00 per acre."

On a separate page of the transcript appears a handwritten instrument, or statement, dated November 21, 1968, and signed by the three viewers. It is not clear whether this instrument is intended as a separate written report or an amendment or supplement to the typewritten report, but it reads as follows:

> "It is our opinion a line should be established and the road built 30 feet West of line for one mile running North and South."

The prime difficulty, and our reason for reversal, lies in the county court order which we set out in full as follows:

> "Now on the 24th day of February, 1969, comes on to be heard the report of the viewers heretofore appointed by this court to view land adjacent to:

>> The Northeast Quarter of the Northeast Quarter and the East half of the Northwest Quarter

---

[1]This undated report bears no filing mark.

of the Northeast Quarter, the Southwest Quarter of the Northeast Quarter, the Southeast Quarter of the Northeast Quarter and the Northeast Quarter of the Southeast Quarter of Section 8, Township 7 North, Range 19 West, located in Pope County, Arkansas.

for the purpose of describing the best route for an access road to said premises, damages to be sustained by the owner of the land determined to be the best route; and from said report the court doth find:

That a road should be established along the East 30 feet of the West half of the East half of Section 5, Township 7 North, Range 19 West. *It is further ordered and decreed that said road shall be located immediately West of a fence (that reportedly runs along the East line of the West half of the East half of said section.)* It is further ordered and decreed that the petitioners herein shall pay to T. E. Bowden the sum of $150.00 per acre or fraction thereof for all lands taken pursuant to this order." (Our emphasis).

On appeal from the county court the case was tried de novo before a jury in the circuit court, and after both sides had rested, the record reveals in-chamber proceedings as follows:

"Mr. Irwin: I would like to ask the Court to direct a verdict in our favor, because of the fact that a necessity has not been shown.

The Court: Over-ruled.

Mr. Irwin: Note our exceptions.

Mr. Gardner: I would like for the jury to be instructed it is their duty to find out if the Oates— if this route is the most feasible to use.

The Court: Sure. The necessity and feasibility is what we have here and nothing more."

The court then instructed the jury as follows:

"Ladies and gentlemen of the jury, you have heard the testimony in this case. Without going through all the formalities of giving the instructions, this law suit, as I told you at the beginning is the right to use property belonging to another person. The law gives an individual that right. The mechanics of it are set up that the county court—County Judge—appoints three persons who are known as appraisers or viewers. They go out and look at the property and come back and make their findings:

These people have testified and their testimony is before you. The thing that you will be instructed on by the Court is the necessity and feasibility of this roadway.

You've also heard testimony that the feasible, or the logical place to place the road, if you so find, would [be] the east 30 feet of the Bowden property.

It is undisputed as the value of that property. Without commenting on the testimony, it's virtually stipulated, if it's not so, that the value of such land was $150.00 per acre.

Now, under the form of the verdicts which we will submit to you, you will not be required to figure out the amount of dollars and cents involved in it, whether it's worth $150.00 or what.
The first form of your verdict, 'We, the jury, find for the petitioner, David Oates and Bill Oates, and assess their liability in the amount of $_____ per acre.' Signed by one of your body as foreman.

If you do not find that this roadway is feasible, or a necessity exists, then the form of your verdict will be, 'We, the jury, find for the respondent,

Tim Bowden,' again signed by one of your body as foreman."

After hearing the testimony of Mr. Oates, Mr. Bowden, and the three viewers; and after receiving the above instructions without objection, the jury returned its verdict as follows:

" 'We, the Jury, find for the Petitioners, David Oates and Bill Oates, and assess their liability in the amount of $150 per acre.' "

The judgment of the circuit court, omitting the formal parts, is as follows:

"IT IS THEREFORE BY THE COURT CON-SIDERED, ORDERED AND ADJUDGED that the liability of the Petitioners, DAVID OATES and BILL OATES, be assessed at One Hundred Fifty Dollars ($150.00) per acre."

There is no objection in the record to the form of this judgment, but we agree with the appellant that it "is not in accordance with the report of the viewers." We also agree with the appellant that the county court order was not in accordance with the report of the viewers, and that the viewers' report is vague and indefinite when the typewritten portion is read in connection with the handwritten portion or statement, and they both are compared with the plat.

In the 1944 case of *Roth* v. *Dale*, 206 Ark. 735, 177 S. W. 2d 179, the county court entered an order, as prayed in the petition, and directed that:

"A strip of land 25 feet wide, off the south side of the southwest quarter, northeast quarter, section 10, township 10 north, range 1 east, owned by defendant, running the entire length of the 40-acre tract, be laid off as the road."

On appeal from the county court order, a circuit court

jury rendered a verdict as follows:

" 'We, the jury, approve the establishment of the road in question, and fix the damages of the defendant at the sum of $200.' "

The circuit court judgment affirmed the order of the county court, and in affirming the circuit court on appeal, this court said:

"Before the trial in the circuit court, the defendant filed a motion to dismiss, for the reason that the report of the viewers and the judgment of the county court thereon were so indefinite that the road could not be located. We think this motion was properly overruled. The order of the court was 'To lay off a strip of land 25 feet wide off the south side of the southwest quarter of the northeast quarter of section 10, township 10 north, range 1 east, owned by defendant, running the entire length of the 40-acre tract of land.' "

However, in the recent case of *Armstrong* v. *Cook*, 243 Ark. 230, 419 S. W. 2d 308, a county court in laying out a private road adopted the viewers' description as follows:

"We recommend that a 20 foot road be built at the same location where the old road is now. There will be no damage to the Cook Farm in the construction of this road."

The circuit court, on appeal, vacated the county court order, and on appeal to this court we said:

"If that report, along with the order of the county court, were recorded, it is apparent that the description is so vague that the road could not be located from an examination of the records."

We pointed out in *Armstrong* that the county court failed to follow the statutory requirements in several

respects, but we held that the circuit court should have tried the case de novo.

In the case at bar, the notices of appointment sent to the viewers by the county clerk seem to assume the necessity for a private road into the Oates' land. The notices are as follows:

"You are hereby notified that you are appointed by County Judge Wayne Nordin of Pope County Arkansas to view the land of David and Bill Oates, together with surrounding land to determine the best and most economical means together with location of a Private Road into their land.

You are further notified to be present at the Office of Pope County Judge, Wayne Nordin of Pope County Arkansas on the 7th. day of October 1968, at 10:00 A.M., for the purpose of receiving your instructions."

The record reveals no additional instructions from the county court, but the circuit court considered the necessity and feasibility of the road as the only matter before the court and jury for determination.

It is obvious from the record that the viewers were all three well acquainted with the property involved. It is apparent, however, that neither of them, nor the appellant, knew where the quarter section division line lay between the Bowden and Yarbrough properties. It might appear that regardless of the exact location of the division line between Bowden and Yarbrough, it was the intention of the viewers, as well as the county court, to lay the road out on Bowden's land and to stay clear of Yarbrough's land. It is apparent, however, that the land claimed by Yarbrough had been cleared, terraced and set in orchard and the adjacent land west of that cleared by Yarbrough, was undeveloped and grown up in bushes.

Apparently the viewers assumed that Yarbrough

had only cleared and built terraces to his fence on the quarter section division line and they attempted to lay out the road just outside the land cleared by Mr. Yarbrough and along the east edge of Bowden's land, which was grown up in bushes. One of the viewers, Mr. Robards, lives on his own land joining Yarbrough's on the east, and he testified, in part, as follows:

"We based our opinion on the farms involved, the road which we are undertaking to—the strip of land which we are undertaking to build the road on, or request that it be built, you would call it waste land. It's ditches, fence rows, and it has very little value to it, which if a road was built, it would value both farms—all parties concerned.

\* \* \*

. . . the second time we were sent out there we were instructed not to set a price, that that would be left up to the Court.

Q. You had given the price the first time?

A. Yes, the first time.

Q. All right, where did you establish the line— Where did you establish the land that the road was to be built?

A. I believe in our report we signed I recommended, the fact is I was the one that dictated the report, *that a line be established between the estates of Loyd Yarbrough and Tim Bowden, and that the road be built 30 feet west of the established line.*

\* \* \*

A. I'm not so sure that there is not a few apple trees comes within twenty foot of what *we*

*would assume the line to be. I just assume the line."* (Emphasis supplied).

Benton Jones, another viewer, testified, in part, as follows:

"Q. Where did you all determine to be the most practical and feasible place to put the road?

A. You're asking about the last time we was there?

Q. Yes, sir.

A. From the established line, the west side, which would be on Tim.

Q. It would be on Tim?

A. Yes.

Q. It would be on the line—are we speaking about the line between Mr. Bowden and Mr. Yarbrough?

A. That's the line I was speaking of.

Q. It would be 30 feet west of that line. That would be in line between the East Half of Section 5 and the West Half of Section 5?

A. I'm not familiar with the section, but if you will show me that map, I'll be glad to show you.

Q. (Shows him the map) This line runs right here between Mr. Yarbrough and—

A. It's this line.

\*    \*    \*

A. Mr. Irwin, I don't know about how wide that strip would be. I don't know where the line is. Loyd goes down the side of his orchard, all the way around the side of his place. He won't set a tree that he can't get around.

\* \* \*

Q. Now, did you all consider running that road on up on the outside of Loyd's trees?

A. Well, the first thing that we considered, and you know how it come in here, the first was to give half and Tim half—

Q. That's right.

A. And then the way I understood it, when Loyd had it surveyed, he was already over on Tim. As far as I'm concerned, I will tell you I don't care where the line is, and I wouldn't care care to leave it that way, if you want to talk about it, but it didn't suit nobody, so I wound up, there was three of us signed it, but it all come off of Tim."

Mr. L. B. Fendley, the third viewer, testified, in part, as follows:

Q. It's been testified that the route you all selected was an area 30 feet west of a line between Mr. Bowden and Mr. Yarbrough?

A. That's true.

Q. Was that, in your opinion, the most practical and feasible route for that road to be located on?

A. Yes, sir."

On cross-examination Mr. Fendley testified as follows:

"Q. Do you know where that line is, Mr. Fendley?

A. I'm not worried about where it is. That's up to the surveyor.

Q. It's up to somebody anyway?

A. It's up to the surveyor, ever where the surveyor surveyed. We said 30 feet west of the line.

Q. Did you see the survey?

A. Did I see the survey?

Q. Yes.

A. They had some stuff down there, but I don't know whether that was it or not.

Q. Do you know whether or not Mr. Bowden and Mr. Yarbrough agreed on the location of the line?

A. All I know is where he's got the fence posts set."

Mr. Bowden testified, in part, as follows:

"Q. Tim, do you and Mr. Yarbrough know where your east line is and where his west line is?

A. No."

The typewritten report of the viewers standing alone with the plat appears definite enough to be followed had the county court, and the circuit court on appeal, seen fit to do so. (See *Roth* v. *Dale,* 205 Ark. 735, 177 S. W. 2d 179). The line referred to in the typewritten report is obviously in reference to the divi-

sion line between the east and west halves of the east half of Section 5, which is also the division line between the Bowden property on the west and the Yarbrough property on the east. The plat, however, shows a well-defined and affirmatively designated fence an unmarked number of feet *west* of the west boundary line of the proposed road. The designated fence is obviously more than 20 feet west of the division line between the east and west halves of the half section *according to the plat.* Yet, the county court, in an attempt to follow the viewers' handwritten statement, or supplemental report, attempted to establish the road as if laid out over the east 30 feet of the west half of the east half of Section 5, and at the same time establish it "immediately west of a fence (that reportedly runs along the east line of the west half of the east half of said section)." If the plat is correct, then the county court's order is wrong because according to the court order the fence is *"reportedly"* in one place and according to the plat, it is *obviously* in another. The judgment of the circuit court, on trial de novo, does not mention the road or the fence, but simply amounts to an affirmance of the county court order.

As already pointed out a county court order was held invalid for indefinite description in *Armstrong,* but error was found in dismissal by the circuit court, as it is the duty of the circuit court to try a case de novo on appeal from the county court.. In the case at bar, the description in the county court order is not so indefinite as it is conflicting, if the plat accompanying the viewers' report is to be considered. The court order, in effect, not only tends to establish the fence as a division line between Bowden and Yarbrough, but according to the plat, tends to move and establish the quarter section line to and along the fence. We are of the opinion that an attempt to lay out a road as directed in the court order would complicate, and add potentially interested parties to an already potential land line dispute between neighbors.

Although the road here involved is referred to in

the pleadings and in the statute as a "private" road, when it is laid out and established it will be public to anyone who has occasion to use it, and its description should be definite enough not only to be located from land records, but its location should be definite enough to avoid future litigation.

This cause is reversed and remanded to the circuit court for a trial de novo on the merits, as other law cases are tried.

Reversed and remanded.

BYRD, J., dissents.